652 So.2d 50 (1995)
Tyrone J. LENNIX
v.
Dawson LABEE, et al.
No. 94-CA-748.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1995.
Writ Denied April 28, 1995.
*51 Robert M. Becnel, Becnel, Landry & Landry, LaPlace, for plaintiff-appellee.
Claude D. Vasser, C. David Vasser, Jr., Vasser & Vasser, Metairie, for defendantsappellants.
Before KLIEBERT, DUFRESNE and WICKER, JJ.
KLIEBERT, Chief Judge.
This is a tort suit resulting from a twovehicle accident on River Road near Mount Airy, Louisiana. From a judgment awarding plaintiff, Tyrone J. Lennix, damages in the amount of $358,788.05 plus legal interest and 60% of all costs, defendants, William G. Galena, Jr., Schneider National Bulk Carriers, Inc. and Insurance Company of North America (INA) suspensively appeal. We affirm.
Defendants contend the trial court erred in the following respects:
1. The lower court's judgment of liability against the Appellants is manifestly erroneous and contrary to the evidence and law. The sole legal and proximate cause of the accident was the plaintiff's gross negligence of driving while intoxicated and failing to keep a proper lookout.
2. The lower court improperly allowed into evidence medical expenses which were inadmissible under the Louisiana Code of Evidence, and thus the court erred in awarding recovery of these expenses to the plaintiff.
3. The lower court erred in awarding the plaintiff future lost wages which are not supported by a preponderance of the evidence.
The standard of review of an appellate court has been set forth in Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) as follows:
[A] court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. * * * The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. * * * [Citations omitted]
*52 Allocation of fault by the trial court is entirely factual and will be reviewed by the court of appeals under the clearly wrong standard. Lee v. Missouri Pacific Railroad Co., 540 So.2d 287 (La.1989). See also Soileau v. South Central Bell Telephone Co., 406 So.2d 182 (La.1981). In determining the degree of fault assigned to the parties, consideration must be given to the following factors:
"(1) Whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the action, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985).
Here, the trial court issued reasons for judgment in which the following findings of fact and damage award were made:
MR. LENNIX, while driving his pickup truck in a westerly direction on the River Road in Garyville, Louisiana, drove into a SCHNEIDER bulk carrier tank trailer driven by MR. GALENA which was backing off of the River Road blocking the highway. The highway was not illuminated by street lights at the location of the collision. MR. LENNIX had consumed no less than six (6) cans of beer during the evening prior to the accident. MR. LENNIX had the right of way and MR. GALENA'S vehicle was blocking his right of way. MR. LENNIX was not speeding.
MR. GALENA testified that he first observed MR. LENNIX'S vehicle while he was in the process of backing off the River Road. When first observed by GALENA, LENNIX was more than 1,000 feet away and was traveling between 35 and 40 mph. Utilizing the time and distance calculations present (sic) by expert witnesses the Court concludes that MR. GALENA had between 15 and 19 seconds to remove his trailer which was obstructing the River Road after he saw the approaching pickup truck. MR. GALENA had, in the Court's opinion, ample opportunity to clear the right of way after seeing the approaching vehicle by simply pulling forward. MR. GALENA'S failure to remove his trailer from blocking the lane of oncoming traffic in a dark area of the highway was negligent conduct. MR. GALENA'S negligence was one of the proximate causes of MR. LENNIX'S injury.
The Court concludes that MR. LENNIX was operating his vehicle while under the influence of alcohol. Experts attempted to quantify the exact level of percentage blood alcohol at the time of the collision. Given the speculative factors of time, food and alcohol consumption and digestive efficiency the Court can not determine the exact percentage of alcohol in MR. LENNIX'S blood stream at the moment of impact. A precise calculation is, however, in the Court's opinion unnecessary. The Court is convinced that MR. LENNIX was driving in an impaired state and that the beer that he consumed hindered his ability to react to the traffic situation presented to him. The Court finds that MR. LENNIX was negligent in that he operated his motor vehicle after having consumed six (6) beers. MR. LENNIX'S negligence contributed to the cause of the collision and to his injuries.
Plaintiff's cause of action against NALCO CHEMICAL COMPANY is dismissed. No evidence of defect design of NALCO'S weigh station was presented to the Court. MR. GALENA testified that no NALCO employee instructed him how to back his truck up or assisted him in backing his truck up.
In supplemental reasons, the court added:
In assessing percentages of fault, the Court finds that MR. GALENA was sixty (60%) percent at fault for the cause of MR. LENNIX's injury and that MR. LENNIX was forty (40%) percent at fault for the injuries he sustained.

*53 Based on the evidence presented at trial the Court concluded that MR. LENNIX observed the Schneider tractor trailer while it was in the process of exiting the NALCO plant site. All witnesses agreed that the front head lights of the tractor were clearly visible from a distance in excess of 1,000 feet. The witnesses, both factual and experts, however, disagreed on the visibility of the trailer section of the tractor trailer rig.
Based on the time and distance testimony, primarily of the tractor trailer driver, the Court concluded that 15-19 seconds transpired from the time the tractor trailer driver saw the LENNIX vehicle approaching at a distance of more than 1,000 feet and the point of collision. The Court concludes, based on these time and distance factors, that MR. LENNIX must have seen the tractor trailer exiting the NALCO site and proceeding onto the River Road. MR. LENNIX would have no reason to suspect that the tractor trailer would reverse its course and back into the driveway that it previously exited.
The lighting conditions combined with the glare from the tractor trailer headlights impaired MR. LENNIX'S ability to see the trailer. The tractor trailer driver had more than sufficient time after seeing the LENNIX vehicle approaching to navigate his trailer out of the ongoing lane of traffic or to have eliminated the dangerous condition by pulling forward or backward.
Defendant, SCHNEIDER NATIONAL BULK CARRIERS, INC., cannot assume that an oncoming driver would have the same visibility of the trailer section of the tractor trailer late at night with inadequate lighting as would be the case in broad day light.
DAMAGES
MR. LENNIX suffered severe bodily injuries as a result of the collision. Dr. Roca, his primary treating physician testified that he sustained a Grade 3 compound fracture of the left upper arm, requiring reconstructive surgery, dislocation in the foot, laceration to the right hand, large lacerations including muscle loss in the arm, muscle damage in the arm, that his bone in his arm was shattered, fracture of the femur, requiring a rod in his upper leg bone, two surgeries were required with regard to the breaks, an additional minor or third surgery was required for cleaning of the wound.
MR. LENNIX spent a considerable period of time in River Parishes Hospital and was then transferred to East Jefferson Rehabilitation due to the fact that he was ambulatory, having a broken arm and a broken leg and a dislocated foot. He spent approximately six (6) weeks either confined to River Parishes Hospital or to East Jefferson Rehabilitation Hospital. He was treated on a consistent basis by his orthopedic surgeon for eight (8) months. He has been evaluated and diagnosed at having a thirty-five (35%) percent total body disability. His surgeon has recommended additional medical care and he faces the possibility of at least one (1) intrusive surgery to remove a metal rod from his leg which will cost approximately $4500.00. Additional physical therapy was recommended which will cost $3,000.00. He has permanent scars to his arm, face and legs. He has lost some feeling and strength in his hand.
MR. LENNIX has not fully recovered from his injury. He continues to experience pain and discomfort on a periodic basis. He is not a malingerer. He wishes to return to an active life style, but his physical injuries have affected his ability to return to work. His treating physician has prohibited him from returning to scaffolding work which was his occupation prior to injury. His physician has warned that any climbing could result in additional injury to himself or others.
The Court assesses general damages for pain and suffering to MR. LENNIX at TWO HUNDRED FIFTY AND NO/100 ($250,000.00) DOLLARS.
LOST WAGES
The Court determines that MR. LENNIX incurred SEVENTY-THREE THOUSAND FIVE HUNDRED FOURTEEN AND 09/100 ($73,514.09) DOLLARS *54 in medical bills. The court concludes that MR. LENNIX will incur FIVE THOUSAND AND NO/100 ($5,000.00) DOLLARS in future medical bills. The total damage award is as follows:

 TOTAL DAMAGES
Pain and suffering and general damages ... $250,000.00
 Past, present and future
Lost wages, past and future............... $269,466.00
Past medical expenses .................... $ 73,514.09
Future medical expenses................... $ 5,000.00
 ___________
TOTAL DAMAGES $597,980.09

Based on the determination of fault WILLIAM G. GALENA, JR. and SCHNEIDER NATIONAL BULK CARRIERS, INCORPORATED are indebted to TYRONE L. LENNIX jointly and insolido in the total sum of THREE HUNDRED FIFTY-EIGHT THOUSAND SEVEN HUNDRED EIGHTY-EIGHT AND 05/100 ($358,788.05) DOLLARS, plus interest from the date of judicial demand, along with sixty (60%) percent of the costs of these proceedings.
We have carefully reviewed the record. It reveals a more than reasonable factual basis for the trial court's findings and allocation of fault. Moreover, we reject defendant's argument that plaintiff was the sole legal and proximate cause of the accident.
In the second assignment of error, defendants contend the trial court erred in allowing into evidence the medical bills of certain health care providers over a timely general objection. On appeal, defendants argue the bills are hearsay and only admissible if they fall within an exception to the hearsay rules. They contend the bills for the following health care professionals were improperly admitted into evidence:
Dr. Kelly Stewart
Adams and Arceneaux
Siegal, Vorhoff
River Parish Hospital
East Jefferson Hospital
Michael Hanneman
East Jefferson Rehabilitation
River Parish Rehabilitation
Southern Medical Mart, Inc.
We disagree. Plaintiff, Dr. Ceasar Roca, Jr., and Henry Nuss, physical therapist, testified concerning plaintiff's injuries and the treatment he received from various health care providers, including those listed above. Plaintiff testified that he received treatment from the above listed health care providers and that he was responsible for their bills in the amount listed, and cite the cases of Jones v. Trailor, 636 So.2d 1112 (La.App. 4th Cir.1994) and Austin v. Pascarelli, 612 So.2d 201 (La.App. 4th Cir.1992) writ denied, 614 So.2d 1256-1257 (La.1993) in support. Thus, the contested medical bills were admissible. See Anders v. Liberty Mutual Ins. Co., 568 So.2d 651 (La.App. 3rd Cir.1990); Landry v. City of Abbeville, 625 So.2d 655 (La.App. 3rd Cir.1993).
This case is distinguishable from Jones and Austin. In those cases, neither the plaintiff nor the testifying physician testified concerning the treatment rendered to plaintiff by the health care professionals whose bills were disallowed. Accordingly, this assigned error has no merit.
Finally, defendants contend the trial court erred in awarding plaintiff future lost earnings because the evidence failed to show "the injuries [plaintiff] sustained in the accident preclude him from earning as much or more than he was earning prior to the accident." We disagree. The record evidence supports the trial court finding that plaintiff will not be able to return to gainful employment. He was assigned a 35% total body disability, principally from the permanent muscle loss in his left arm, but also from problems with balance. He is limited to working on level surfaces that does not require extended standing or heavy lifting. Plaintiff's expert estimated the total past and future wages plaintiff could earn for his work life expectancy to be $581,309.00. However, because plaintiff is able to perform lighter duty labor, the trial court subtracted the expert's estimate of plaintiff's wages for his work life expectancy at $8.00 per hour, or $311,843.00 for a net future wage loss of $269,466.00. We see no error in this finding.
*55 Accordingly, for the assigned reasons, the trial court judgment is affirmed. Each party to bear his respective costs of appeal.
AFFIRMED.