786 So.2d 147 (2001)
Dr. Fritz FIDELE
v.
CRESCENT FORD TRUCK SALES, INC. and AM General Corporation.
No. 00-CA-1934.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2001.
*148 Robert J. Caluda, Robert J. Caluda and Associates, New Orleans, LA, Counsel for plaintiff-appellant.
Leonard L. Levenson, Pamela M. Wiza, New Orleans, LA, Counsel for defendant-appellee, Crescent Ford Truck Sales, Inc.
Charles D. Elliott, Faircloth & Davidson, Alexandria, LA, Counsel for defendant-appellee, AM General Corporation.
*149 Court composed of Judges DUFRESNE, GOTHARD and McMANUS.
McMANUS, Judge.
In this matter, Appellant, Dr. Fritz Fidele,[1] appeals the trial judge's having dismissed his claim for rescission of the sale of an automobile. Having reviewed the record, we see no error, and therefore affirm the judgment of the trial court.

STATEMENT OF THE CASE
The matter was instituted in January, 1998, with Fidele's petition for damages, which named as Defendant Appellee Crescent Ford Truck Sales, Inc., from whom Fidele had bought the car, with a principal place of business located in Orleans Parish. The suit, therefore, was filed in Civil District Court for the Parish of Orleans.
Though the petition did not specifically ask for rescission of the vehicle, a 1995 Hummer, it did allege that Fidele would have not bought the Hummer had he known of the defects discovered subsequent to the purchase. In addition, the petition specifically listed problems with the air conditioner and tires and problems with oil leaks, and alleged that the car was prone to excessive noise and vibration.
Crescent filed exceptions to the suit, alleging, among other things, improper venue, and arguing that the manufacturer of the Hummer should be a necessary or indispensable party to the action.
A first supplemental petition added as a Defendant Appellee AM General Corporation, the manufacturer of the Hummer, and added as a Plaintiff Plaza Medical Center, Ltd., Fidele's own business, the registered owner of the car. A second amending petition alleged that Fidele had, over the course of his ownership of the vehicle, given Crescent adequate opportunity to make repairs.
AM General also objected to venue in Orleans Parish, and the suit was transferred to Jefferson Parish on February 10, 1999.
A bench trial was held on June 20, 2000, and at the conclusion of Fidele's case, the trial judge granted both Appellees' motions for involuntary dismissal. A written judgment was signed August 31, 2000.
Fidele's motion for appeal was granted September 22, 2000, and he now argues two assignments of error:
1. Because of evidentiary errors of the trial court, this Court must review the trial court's judgment de novo: the trial court erroneously prohibited petitioner's presentation of evidence establishing recurrent air conditioning defects; the trial court improperly excluded documentary evidence as inadmissible hearsay.
2. The trial court's granting of defendant's [sic] motion for involuntary dismissal was erroneous and should be reversed.

FACTS
Fidele testified that he had purchased the 1995 Hummer from Appellee Crescent on June 5, 1996. Fidele testified that he had purchased the vehicle to drive back and forth among Plaza Medical Center's chiropractic clinics, and to possibly transport equipment from one clinic to another. Fidele testified that when he sold the vehicle, on August 31, 1998, he sold it without any warning to the purchaser about any of the problems he had been experiencing. As damages, Fidele testified that he sought to recover sums he had paid on the car note over the years he had owned the *150 vehicle, which he estimated to be an amount between $20,000.00 and $25,000.00.
Fidele himself testified to various problems he had experienced while he owned the car, but also admitted that he had not read the owner's manual which came with the vehicle and which detailed the regular servicing required. The evidence admitted regarding possible defects in the car is as follows.
Fidele testified that the first problem he had experienced was with the vehicle's tires. He testified that "shortly after" he purchased the vehicle, he began to experience problems with the wheel alignment, which problem went on for "quite some time." He also testified he had a problem with "fast" wear and tear on the tires, and stated that sometimes the tires were unable to maintain proper air pressure. Fidele testified that he had taken the Hummer in for these problems, and we note that several of the repair invoices from Crescent do indicate problems with tires. Finally, Fidele testified that he had checked the tire pressure on a monthly basis.
Fidele testified that he had also had problems with excessive vibration. He testified that the vibration made riding in the Hummer uncomfortable and annoying, and that the vibration had continued as long as he had owned the vehicle. Fidele testified that he had brought the Hummer in for servicing of this problem, and we note that at least one of the Crescent invoices does list this problem. Though Fidele admitted that he did not know of his own knowledge why the vehicle vibrated to such a degree, he did testify that he would not have purchased the Hummer had he known that this problem would arise.
Fidele testified that the Hummer had electrical problems and that it failed to start "at least" three times because of this problem. He testified that he took the vehicle in each of these times, and we note that one of the Crescent invoices does indicate such a problem. Fidele testified that he would have not purchased the Hummer had he known it would have this problem.
Fidele testified that he had problems with the vehicle's air conditioner. He testified that these problems had begun in May or June of 1996, and that he had to have the air conditioner serviced during an out of town trip in 1997. He stated that he brought the vehicle in for servicing of this problem at least four times, and that there were times when it had been in the shop for two weeks, waiting for parts. Fidele testified that he would have not purchased the Hummer had he known that he would have the recurring problems with the air conditioner.
Fidele testified that the steering wheel locked "at least" three times, and that the vehicle had been towed "at least" twice because of this problem. He also testified that the vehicle had problems with the heat shield, the glove box, and one of the seats in the vehicle, and that he brought the vehicle in for servicing of each of these problems. Finally, he testified that the vehicle had "jolted forward" while stopped "at least" twice, and that he felt the vehicle to be unsafe after these occurrences.
Fidele did admit that the engine of the vehicle had been damaged, and serviced, in March of 1997, because he had operated the car without sufficient oil. The repair invoice from Crescent indicates that on this occasion the vehicle had required six quarts of oil, and that on this occasion, someone at Crescent had "discussed proper maintenance [of the vehicle] per owner's manual" with Fidele.
Fidele at first stated that he had not been provided with the service manual, then admitted that the manual had been *151 located for him "after" he had begun to experience problems with the vehicle. He did acknowledge that owner's manuals are routinely provided with new vehicles, and testified that he had located such manuals in his other cars without having had to ask dealers for help.
Fidele admitted that he had not ever checked the oil level, and further admitted that he had not read the owner's manual to ascertain any of the regular service requirements. When questioned, Fidele admitted that he had not read the manual or complied with any of the directions in the manual regarding regular servicing of the Hummer, including instructions which require the owner to check the oil level each time the vehicle is re-fueled.
Finally, Fidele testified that he did not know "of his own knowledge" whether the problems he had with the vehicle were the result of defects in the vehicle, or whether they were caused by his lack of attention to proper maintenance procedures.
The record shows the following regarding the exhibits that were excluded by the trial judge. Though the record is somewhat confused regarding objections to the documentary evidence of repairs to the air conditioner, it seems that the trial judge ultimately excluded any pre 1997 invoices for such problems because Fidele had not supplemented discovery responses to Appellee AM General to include any such invoices. Though AM General had requested such documentary evidence by means of a subpoena duces tecum, filed in conjunction with a notice of deposition of Appellant Fidele, counsel for AM General indicated at trial that they had not been provided with documentation indicating any air conditioner problems occurring before 1997. And we note that the joint pretrial order lists a "repair invoice" dated March, 1997, as the earliest invoice (for any repairs) provided by Fidele to AM General.
In addition, based on hearsay objections by counsel for Appellee Crescent, the trial judge excluded repair records from Leson Chevrolet, Capitol Cadillac Company and Goodyear Commercial Tire & Service Center.
In granting the motions for involuntary dismissal, the trial judge made the following findings:
I find that the Plaintiff has failed to sustain his burden of proof. He has not made a prima facie showing that he's entitled to have this case go on or that he could prevail even if the Defendants put on a case. The Court has received symptoms and not causes and that is the Court has heard problems that the Doctor experienced with his vehicle and I have no doubts that he did experience problems with this vehicle. However, there has been nothing presented here to show the cause of that such that the Court can find that these two Defendants are liable with respects to this vehicle. I find it quite astonishing ... that someone of Dr. Fidele's experience and training would purchase vehicles and never read the manual and not being aware of what is necessary with respects to the operation of a vehicle and then would presume that the other parties would be responsible for it ... There are some hypotheses which are suggested which are reasonable and that is that Dr. Fidele's lack of maintenance of this vehicle could have caused the problems associated with it. But that's his burden to establish that the Defendants are responsible, at least make a prima facie showing at this juncture. That has not occurred.

ASSIGNMENT OF ERROR NUMBER 1
As his first assignment of error, Fidele argues that the trial judge was in error to *152 have excluded certain documentary evidence regarding repairs to the vehicle.
As to the documentary evidence of pre 1997 air conditioner repairs, Appellee AM General's objection-that these invoices had never been provided to them-is supported by the record. Counsel for AM General stated as much at trial, and the joint pretrial order confirms these statements. Though the pre-trial order lists numerous invoices, it shows a March 1997 invoice as the earliest that had been provided to AM General by Fidele.
A party who has responded to a request for discovery that is incomplete is under an affirmative duty to supplement such response. LSA C.C.P. art. 1428; Nu-Lite Elec. Wholesalers, Inc. v. Colonial Elec., 527 So.2d 498, 500 (La.App. 5 Cir.1988). Further, the trial court has great discretion with regard to admission of evidence when a party objects on the ground that his opponent failed to supplement discovery. Savoie-Moore v. Moore, 98-0235, at 3 (La.App. 4 Cir. 9/16/98), 719 So.2d 551, 554.
As of the filing of the joint pre-trial order, Fidele was aware that Appellee AM General believed the air conditioner in the vehicle had not been repaired before March of 1997. However, Fidele knew differently, and because he sought to claim earlier air conditioner repairs than those shown on the pre-trial, he was under a duty to have provided AM General with these earlier repair invoices. He did not, and we see no manifest error in the trial judge's having disallowed their introduction into evidence.
Nor do we see any error in the trial judge's having excluded evidence objected to on the basis of hearsay. As noted, Fidele sought as damages those payments made on the car note; he did not seek to recover any sums spent on repairs to the vehicle. The repair invoices, therefore, were offered not as proof of damages, but as proof of various defects.
Hearsay is defined as a statementan oral or written assertion-other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801. The invoices, offered to prove that the vehicle was defective, were plainly hearsay.
We acknowledge the authority under which bills are admissible, under the business records exception to the hearsay rule, to prove damages. See, for example, Peterson v. Parish of Jefferson, 95-711, at 3-4 (La.App. 5 Cir. 2/27/96), 668 So.2d 1386, 1388-89. However, here, Fidele did not identify the invoices as bills paid by him. In fact, it seems that some of the repairs were covered under the Hummer's warranty. Therefore, the one element of the invoices which would have allowed Fidele to authenticate the bills-the fact that they accurately reflected amounts paid by him for the repairs shown-is missing here. And at any rate, as noted, Fidele did not offer the invoices as proof of damages.
We see no error in the trial judge's rulings excluding any of these exhibits.

ASSIGNMENT OF ERROR NUMBER 2
As his second assignment of error, Fidele argues that the trial judge was in error to have granted the Appellees' motions for involuntary dismissal. We see no manifest error.
LSA-C.C.P. art. 1672 holds, in pertinent part, as follows:
B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, *153 may move for a dismissal of the action as to hin on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In addition,
The appropriate standard for the trial judge to use to determine the merits of the motion to dismiss is whether the plaintiff has presented sufficient evidence to establish his case by a preponderance of the evidence
. . . .
The trial court is not required to view the evidence in the light most favorable to the plaintiff. It may weigh and evaluate all the evidence presented up to that point and order a dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence ... Pursuant to Art. 1672(B) the trial judge must weigh and evaluate all of the evidence presented in determining whether to grant the motion for dismissal. He has much discretion in making that determination.
Baggett v. Schwegmann Giant Super Markets, 99-421, at 6-7 (La.App. 5 Cir. 11/10/99), 750 So.2d 1027, 1030 (citations omitted).
The law regarding redhibitory defects, found in LSA-C.C. art. 2520, is as follows:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale. A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
Further, minor defects alone do not constitute redhibitory defects. Even though vices may be minor or may have been repaired, multiple defects collectively may support redhibition. The existence of redhibitory defects is a question of fact which should not be disturbed in the absence of manifest error. Ford Motor Credit v. Laing, 30,160, at 4 (La.App. 2 Cir. 1/21/98), 705 So.2d 1283, 1286 (citations omitted); Reid v. Leson Chevrolet, Co., Inc., 542 So.2d 673, 675 (La.App. 5 Cir.1989) (citations omitted).[2]
We agree with the facts as found by the trial judge-we agree that Appellant Fidele proved only "symptoms and not causes." Even with the documentary evidence admitted, Fidele has shown only that the car was repaired (admittedly) numerous times. Neither his testimony nor the exhibits establish that these repairs were due to any defect in the vehicle. We have reviewed all of the admitted exhibits, and can find nothing in any of them that tells us that Crescent found the vehicle "defective." Further, Fidele admitted in his testimony that he had no personal knowledge why the vehicle might be "defective." We realize that Appellant Fidele is not an automobile mechanic. Of course, no member of this panel is an automobile *154 mechanic, and this is why none of us is able to say, without something more than what we see in the record, that the "symptoms" complained of were so out of the ordinary that the vehicle itself was defective.
Further, we also agree with the trial judge's finding that even the problems Fidele had may have been caused by his own inattention to the maintenance necessary for the vehicle. Fidele admitted that he had not read the owner's manual for the vehicle, and admitted that he had not done any of the required maintenance on the vehicle.
Finally, we note that Fidele's sale of the vehicle to a third party-without any warning about the numerous problems he had been experiencing-weighs very heavily against allowing him to recover damages for a "defective" vehicle. Though Fidele stated several times that he would not have purchased the vehicle had he known of the various "defects," apparently, the defects were not such that they would prevent anyoneFidele's vendee, for example-from getting use out of the vehicle: we simply cannot accept Fidele's assertions that the vehicle was useless, or, at least, almost useless, to him. We see no manifest error in the trial judge's finding that Fidele is entitled to any damages for the claimed redhibitory defects.
For the above reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Correctly spelled Fridele
[2] Comments to article 2520 indicate that an amended and reenacted article, effective January 1, 1995, did not change the law. The cited authority, therefore, remains applicable.